AO 432
(Rev. 2/84)

**Administrative Office of the United States Courts**

## WITNESS AND EXHIBIT RECORD

| DATE | CASE NUMBER | OPERATOR | | PAGE NUMBER |
|------|-------------|----------|---|-------------|
| March 14, 2007 | 07-43M | Watson | | 1 |

| NAME OF WITNESS | DIRECT | CROSS | REDIRECT | RECROSS | PRESIDING OFFICIAL |
|-----------------|--------|-------|----------|---------|--------------------|
| Timothy Kerstetter | 1:08p | 1:18p | 1:44p | | MPT |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| EXHIBIT NUMBER | DESCRIPTION | ID | ADMITTED IN EVIDENCE |
|----------------|-------------|-----|----------------------|
| Gov't 1 | Criminal Complaint USDC of Virginia | | Y |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

GOVERNMENT
EXHIBIT

1

**United States District Court**

**EASTERN** _____ **DISTRICT OF** _____ VIRGINIA

MAR - 6 2007

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**RICHMOND DIVISION**

**UNITED STATES OF AMERICA**

**CRIMINAL COMPLAINT**

v.

CASE NUMBER: 3:07 MJ 132

**RONALD GERALD ROUNDTREE,
TERRI LYNN SINGLETON, and
WILLIAM JOHN STATTS,**

REDACTED

**Defendants.**

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief: Between in or about January 2005 and the date of this Complaint, within the Eastern District of Virginia and elsewhere, the defendants did knowingly conspire with one another and with other persons to commit an offense against the United States, namely, intentionally to traffic in goods and knowingly use counterfeit marks on and in connection with such goods, in violation of Title 18, United States Code, Section 2320, and, to effect the object of the conspiracy, the defendants committed the following overt acts within the Eastern District of Virginia and elsewhere: on or about April 22, 2005, RONALD GERALD ROUNDTREE intentionally trafficked and attempted to traffic in goods and knowingly used a counterfeit mark on and in connection with such goods, all in violation of Title 18, United States Code, Sections 371 and 2320.

I further state that I am a Special Agent, FBI, and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

David J. Glawe

Sworn to before me, and subscribed in my presence

March 6, 2007 _____                        at Richmond, Virginia _____

**Date**                                         **City and State**

Dennis W. Dohnal, U.S. Magistrate Judge          Dennis W. Dohnal

**Name and Title of Judicial Officer**           **Signature of Judicial Officer**

A TRUE COPY, TESTE
CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

## AFFIDAVIT OF DAVID J. GLAWE

I, David J. Glawe, being duly sworn, depose and state as follows:

### Introduction

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been employed by the FBI since 2004. Previously I was employed as a Federal Agent/United States Postal Inspector; Houston, Texas, Police Officer/Detective; and Aurora, Colorado, Police Officer/Investigator. I have investigated numerous complex criminal violations, including trademark infringement, trafficking in counterfeit goods, racketeering, and money laundering. As a federal agent, I am authorized to investigate violations of the laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

2. This Affidavit is submitted in support of a complaint charging conspiracy to traffic in counterfeit goods, in violation of 18 U.S.C. sections 371 and 2320, and arrest warrants for RONALD ROUNDTREE, TERRI LYNN SINGLETON, and WILLIAM STATTS.

3. Since August 2004, the FBI has been investigating trafficking in counterfeit merchandise and criminal copyright/trademark infringement involving numerous subjects in multiple judicial districts throughout the United States. The statements contained in this Affidavit are based upon my experience and background as a Special Agent of the FBI, information supplied to me by other Special Agents of the FBI and law enforcement officers, my review of law enforcement reports, participation in physical surveillance and other investigative activity, and undercover operations, by me and other law enforcement

1

officers, resulting in numerous controlled purchases of counterfeit merchandise from targets of this investigation. On the basis of this information, I allege that the facts set forth herein establish probable cause to believe that RONALD ROUNDTREE, TERRI SINGLETON, WILLIAM STATTS, and others have committed and are committing offenses in violation of Title 18, United States Code, Sections 371 (conspiracy), and 2320 (trafficking in counterfeit goods).

4. In submitting this Affidavit, I have not included every fact known, but only those that I believe establish probable cause that the above-referenced offenses have been committed.

### Subjects of the Investigation

5. RONALD GERALD ROUNDTREE, aka Talib, is a black male, date of birth (DOB) XX/XX/1956, place of birth (POB) New Jersey, Social Security Account Number (SSAN) XXX-XX-8466, and FBI Number XXXXX7VB9. His address, as provided by the Virginia Department of Motor Vehicles (DMV), is
Virginia, 23963, which DMV shows corresponds to the physical address of

Virginia, 23963. ROUNDTREE has no known legitimate source of income. ROUNDTREE lives with his legal wife Verna Robbins-Roundtree at this address, but also cohabitates with two other women, Keisha Jenelle Simms and TERRI LYNN SINGLETON. ROUNDTREE cohabitates with Simms at Lynchburg, Virginia, and with SINGLETON at                       Beckley, West Virginia. Previously ROUNDTREE and SINGLETON resided at

, Beckley, West Virginia, until December 20, 2007, when United Parcel Service

records show that ROUNDTREE began to receive packages at                    Beckley,

West Virginia, 25801.

6. On February 9, 2007 I reviewed a criminal history regarding ROUNDTREE

obtained through the National Crime Information Center (NCIC). This report reflected

that ROUNDTREE was convicted on December 4, 2001 in the Commonwealth of

Pennsylvania for the state violations of Copying Recording Devices and Criminal

Conspiracy. Virginia DMV records disclosed that ROUNDTREE is the registered owner

of a 1991 Mazda Van with no plates and a 2001 Ford Windstar Van with Virginia plates

KBR8085.

7. TERRI LYNN SINGLETON, is an associate and unofficial wife of RONALD

ROUNDTREE. SINGLETON is a female, DOB XX/XX/1972, POB West Virginia,

SSAN XXX-XX-9258, and FBI Number XXXXX7PA2. Her address as provided by the

West Virginia DMV is                    ., Beckley, West Virginia 25801. However, a review

of court-authorized wire interceptions occurring over telephone number

subscribed to by ROUNDTREE, revealed that ROUNDTREE resided with TERRI

SINGLETON at                    Beckley, West Virginia, 25801 during the

period of interception. As noted below, United Parcel Service records show that

ROUNDTREE and SINGLETON recently moved to                    , Beckley,

West Virginia, 25801, receiving a United Parcel Service delivered package there on

December 20, 2006.

8. On February 8, 2007, I reviewed an NCIC criminal history record regarding

SINGLETON which reflected that SINGLETON was charged on April 8, 1992, by the

state of West Virginia for felony Distribution of Crack Cocaine, and was also charged in

West Virginia on September 19, 2001, for felony Conspiracy to Distribute Crack Cocaine. The disposition of these charges was not indicated on the NCIC report.

9. WILLIAM JOHN STATTS, aka Hamza, is a male, DOB XX/XX/1969, place of birth Delaware, SSAN XXX-XX-9658, and FBI Number XXXXX2CA1. His current address as provided by the Delaware DMV is :                    , Harrington, Delaware 19952.

10. On February 8, 2007, I reviewed an NCIC criminal history which showed that STATTS was charged in Delaware on December 10, 2002 for Violation of Probation and was subsequently found in violation. It also reflected that STATTS was arrested on the following dates and convicted of the following charges in the State of Delaware: May 25, 2002 and January 25, 2001, for Sale of Transferred Recorded Sounds; November 18, 2000 for Forgery First Degree – Money Stamps Securities Other Valuables Issued by Government; June 17, 1998 for Violation of Probation, on July 30, 1990 for Delivery of Narcotics Schedule I or II, on May 31, 1985 for Theft over $300.00, on February 26, 1995 for Carrying a Concealed Deadly Weapon, on July 18, 1984 for Resisting Arrest, on July 18, 1984 for Criminal Mischief under $300.00, and on July 18, 1984 for Theft under $300.00.

11. KEISHA JENELLE SIMMS is an associate of RONALD ROUNDTREE, with DOB XX/XX/1975, SSAN XXX-XX-8731, POB Virginia, and FBI Number XXXXX8CC0. Her address as provided by the Virginia DMV is Lynchburg, Virginia. A review of Virginia DMV records disclosed that SIMMS is the registered owner of a 1984 Datsun four-door station wagon and a gold 1997 Nissan Maxima.

4

12.  TALIB'S SPORTSWEAR is a name under which ROUNDTREE has done

business.  On July 21, 2006, City of Lynchburg business license documents for TALIB'S

SPORTSWEAR, located at 7306 Timberlake Road, Lynchburg, Virginia, were acquired

and showed the following:

> Licensee:             Ronald Gerald Roundtree
> License Year:         2006
> Mailing Address:                                         5
>                       Redhouse, Virginia 23963
> SSAN:                 xxx-xx-8466
> License Number:       018483
> Trade Name:           Talib's Sportswear
> Ownership Type:       Sole Proprietor
> Business Phone:       434-426-2691

On February 5, 2007, the City of Lynchburg Commissioner of Revenue's office

confirmed that the information provided on July 21, 2006 was still current.

ROUNDTREE also has been affiliated with UNITY URBAN WEAR, a retail clothing

business at 15241 Wards Road, Lynchburg.

13.  GIZMO WEAR, INC., aka Gucci USA, T Shirts International, Inc., Jump

International Men's Sportswear, Jump Wear, and Tea Shirts, Inc., of 18 W. 27th Street,

New York, New York, has been and is currently engaged in the production and/or

distribution of counterfeit merchandise.  Gizmo Wear and affiliated companies are

operated, owned or co-owned by ABBAS CHOUMAN, HUSSEIN CHOUMAN, and

HASSAN CHOUMAN.  I, through the SOURCE, has conducted multiple controlled

purchases of counterfeit clothing directly from RONALD ROUNDTREE since January

2005, some of which has been sold to ROUNDTREE by Gizmo Wear, Inc.  In addition,

in August and September, 2006, the SOURCE purchased counterfeit clothing directly

from the business at 18 W. 27th Street, New York, New York.  Based on these controlled

purchases, a review of shipping records, and telephone analysis, your Affiant has reason

to believe that Gizmo Wear Inc. has conspired and continues to conspire with ROUNDTREE in the distribution of counterfeit merchandise.

### The SOURCE

14. In December 2004, I was contacted by a Virginia municipal police department, regarding the sale of counterfeit CDs and clothing. The police department was in contact with a confidential source, referred to in this Affidavit as the SOURCE, who had known RONALD ROUNDTREE, also known as "Talib," since approximately 2002. On his own initiative on numerous occasions prior to his/her contact with the municipal police department, the SOURCE had purchased counterfeit DVDs, CDS, and Mitchell & Ness National Basketball Association (NBA) and National Football League (NFL) "throwback" jerseys from ROUNDTREE. (A throwback jersey is a sports jersey that commemorates past athletes in the styles they wore at the time they were playing.) In addition, the SOURCE had visited ROUNDTREE's residence,

, Lynchburg, Virginia.

15. The SOURCE has been cooperating with the FBI for approximately 25 months and has provided reliable information relating to the criminal activities of the subjects of this investigation as recently as January 31, 2007. The SOURCE continues to cooperate with the Richmond FBI. The information provided by the SOURCE has been independently corroborated and determined to be reliable. Between January 2005, and the present, the FBI has paid the SOURCE a total of approximately $22,500 for his/her services. The SOURCE has a criminal history but is not currently under indictment, investigation, or pending criminal charges. In addition, the SOURCE has no convictions for perjury, false statements or obstruction of justice. The SOURCE, over the course of

this investigation, has made over 40 consensually-recorded conversations, telephonic and

in-person, with ROUNDTREE and others, and has conducted at least 15 controlled

purchases of counterfeit merchandise from various subjects of this investigation, most

recently on January 31, 2007. Information provided by the SOURCE was used in

affidavits supporting applications for orders authorizing telephonic electronic

surveillance of RONALD ROUNDTREE, and filed in the United States District Court for

the Eastern District of Virginia on July and August 2006. None of the information

provided to me by the SOURCE is known to be false or misleading.

### January 14, 2005, Controlled Purchase

16. The SOURCE telephoned ROUNDTREE on January 14, 2005, at cellular

telephone number ·                        a telephone subscribed to Aliya Williams,

Lynchburg, Virginia. ROUNDTREE had provided this number to the SOURCE

so that the SOURCE could contact him for the purpose of purchasing goods believed by

the SOURCE to be counterfeit. During the conversation, which was not consensually

recorded, the SOURCE arranged to purchase six Mitchell & Ness NFL throwback jerseys

for $45 per jersey. The retail value of six authentic Mitchell & Ness jerseys is

approximately $1,800.

17. Later that day, I observed a person matching the description of RONALD

ROUNDTREE exit the residence at                        , Lynchburg, Virginia, and meet

with the SOURCE in the adjacent parking lot. I observed the SOURCE provide $245 in

official funds to ROUNDTREE and ROUNDTREE provide the jerseys to the SOURCE.

The SOURCE later presented I with six counterfeit Mitchell & Ness NFL throwback

jerseys.

## February 3, 2005, Controlled Purchase

18. The SOURCE telephoned ROUNDTREE on February 3, 2005, at

to arrange the purchase of 50 new release DVD movies from ROUNDTREE. This

conversation was not consensually recorded. Later that day, I observed ROUNDTREE

arrive at the agreed upon location, in Farmville, in the Eastern District of Virginia,

driving a white Mitsubishi Eclipse registered to KEISHA SIMMS,

Lynchburg, Virginia. The SOURCE spoke with ROUNDTREE inside the vehicle for

approximately ten minutes. This conversation was consensually recorded. The

SOURCE was observed exiting the vehicle carrying two plastic bags. At approximately

3:00 p.m., I and a Task Force Officer met with the SOURCE and recovered the suspected

counterfeit DVDs. I viewed a random sampling of fifteen of the DVDs and observed that

they were current release films. It was evident that the movies had been filmed with a

hand-held video recorder inside a movie theater.

## April 22, 2005, Controlled Purchase

19. On April 12, 2005, the SOURCE telephoned ROUNDTREE at telephone

number                      During the conversation, the SOURCE ordered six Mitchell &

Ness NFL jerseys. The approximate retail value of authentic Mitchell & Ness jerseys is

$250-$350.00 per jersey. ROUNDTREE agreed to a sale price of $40.00 per jersey.

ROUNDTREE stated that he had to order the jerseys from a supplier located in the

northeast region of the United States and that they would be delivered to his home in

Lynchburg via UPS. The SOURCE also requested that ROUNDTREE explain how he

set up his business, TALIB SPORTSWEAR. ROUNDTREE explained that he obtained a

mercantile business license in Lynchburg, Virginia, and established the business so as to

8

make it appear legitimate to law enforcement and the Internal Revenue Service.

ROUNDTREE stated he used an accountant to complete his taxes and he received a

refund because he did not show a profit. Telephone records reflect that on April 20, 2005,

six telephone calls were placed from the telephone known to be used by ROUNDTREE

to telephone number (212) 679-4042, subscribed to Gucci USA, 18 W. 27th Street, New

York, New York.

20. On April 22, 2005, the SOURCE called ROUNDTREE and inquired when he

could meet ROUNDTREE to pick-up the jerseys that the SOURCE had ordered.

ROUNDTREE stated that UPS usually delivers his packages between 11:00 a.m. to 12:00

p.m. ROUNDTREE telephoned the SOURCE at approximately 12:30 p.m. and advised

he had received the package from UPS. At approximately 2:00 p.m., the SOURCE met

with ROUNDTREE in Farmville, in the Eastern District of Virginia. ROUNDTREE

drove to the meeting in a white Mitsubishi Eclipse registered to KEISHA SIMMS. I

observed ROUNDTREE accept official funds from the SOURCE for the purchase of six

suspected counterfeit Mitchell & Ness jerseys.

21. On April 22, 2005, Jerry Hammit, Security Director for the Richmond United

Parcel Service (UPS) Package Center, advised I that a UPS express package weighing

approximately seven pounds addressed to TALIB SPORTSWEAR, 2136 Fort Avenue,

Lynchburg, Virginia, was delivered there at approximately 12:05 p.m. Aliya Williams,

believed to be the daughter of ROUNDTREE, signed for the package. This package was

C.O.D. in amount of $217.00. The UPS driver accepted a money order made payable to

GIZMO WEAR, Inc., 28 W. 27th Street, Floor 4, Suite 40, New York, New York,

telephone (212) 685-7885.

Case 1:07-mi-00043-MPT   Document 8   Filed 03/14/2007   Page 12 of 37
US ATTORNEYS OFFICE   Fax:302-573-6120     Mar  8 2007  11:36    P.13

MAR-08-2007  07:26                                                                    P.13

### June 23, 2005, Controlled Purchase

22. On June 14, 2005, the SOURCE received a telephone call from a number subscribed to by RONALD ROUNDTREE. ROUNDTREE inquired if the SOURCE wanted any Mitchell & Ness NBA basketball jerseys. The SOURCE ordered six jerseys from ROUNDTREE, to be delivered on June 20, 2005. They agreed to a total purchase price of $240.00. On June 23, 2005, a controlled purchase occurred in the parking lot of Unity Urban Wear, Inc., in Lynchburg, when the SOURCE purchased the six Mitchell & Ness throwback NBA jerseys he/she ordered on June 14, 2005, for $240.00 in official funds from ROUNDTREE.

### October 4, 2005, Controlled Purchase

23. On September 28, 2005, the SOURCE was directed to arrange for the controlled purchase of counterfeit jerseys from ROUNDTREE. The SOURCE placed a call to ROUNDTREE to arrange the purchase in which the SOURCE would "front," or pay in advance, for the purchase and take delivery at a later time. Task Force Agents provided the SOURCE with $600 in official funds for the purchase, and observed ROUNDTREE meet with the SOURCE outside of Unity Urban Wear and then enter the business. The SOURCE later advised the Agents that he/she provided ROUNDTREE with the $600 in "front" money, and they agreed on the number of jerseys that ROUNDTREE would provide.

24. On October 4, 2005, the SOURCE reported that he/she telephoned ROUNDTREE, not consensually recorded, to arrange to take delivery of the jerseys ordered and paid for on September 28, 2005. At the meeting, at a Burger King restaurant in Lynchburg, Virginia, ROUNDTREE drove a white Mitsubishi Gallant. Prior to giving

10

them to the SOURCE, ROUNDTREE counted 15 Mitchell & Ness jerseys.

ROUNDTREE also told the SOURCE he was traveling to New York to pick-up more

clothing. Following the meeting, Task Force Agents took possession of the 15 suspected

counterfeit Mitchell & Ness NFL throwback jerseys from the SOURCE.

### November 16, 2005, Controlled Purchase

25. On November 8, 2005, the SOURCE placed a telephone call to

ROUNDTREE, to arrange to "front" ROUNDTREE $580 for the purchase of Mitchell &

Ness throwback football jerseys. That afternoon, I observed the SOURCE enter Unity

Urban Wear and meet with ROUNDTREE. ROUNDTREE told the SOURCE the

football jerseys were $40 a piece, but he would sell 13 jerseys for a total of $500. The

SOURCE provided ROUNDTREE with $580 in official funds, $500 for the purchase of

the jerseys and $80 for the shipping cost. The SOURCE also purchased one pair of Nike

shoes, size 9, from Unity Urban Wear, for which he paid $49.95. Nike investigators

advised your Affiant in April, 2006, that the sale was not authorized and would be

considered a trademark infringement violation.

26. On November 16, 2005, the SOURCE called ROUNDTREE and confirmed a

meeting for later that day so that the SOURCE could take delivery of the jerseys paid for

on November 8, 2005. At approximately 10:34 a.m., ROUNDTREE met with the

SOURCE at a Burger King restaurant on Campbell Avenue in Lynchburg, Virginia.

ROUNDTREE drove a black KIA minivan registered to VERNA ROBBINS-

ROUNDTREE, ROUNDTREE's wife. A passenger in the KIA minivan, who was

subsequently identified as VERNA ROUNDTREE, was observed in the passenger seat

during the transaction. After the deal a Task Force Agent took possession of twelve

11

counterfeit Mitchell & Ness throwback NFL jerseys and one suspected counterfeit Reebok NFL jersey.

**January 25, 2006, Controlled Purchase**

27. On January 23, 2006, the SOURCE called ROUNDTREE and inquired about purchasing counterfeit DVD movies. At first, ROUNDTREE stated that he did not have movies for sale. ROUNDTREE then stated that he had "maybe twenty." The two men agreed to meet on January 25, 2006. That morning, the SOURCE called ROUNDTREE and inquired about purchasing DVDs. ROUNDTREE directed the SOURCE to pick him up at Unity Urban Wear. ROUNDTREE told the SOURCE they needed to travel to one of his homes for the DVD purchase. The SOURCE was surveilled to Unity Urban Wear where he/she picked up ROUNDTREE in the parking lot. The SOURCE and ROUNDTREE were then surveilled to                    Lynchburg, Virginia, the home of KEISHA SIMMS, and observed entering the residence. The SOURCE was inside the residence for approximately fifteen minutes and exited carrying two plastic bags. Your Affiant followed the SOURCE and ROUNDTREE back to Unity Urban Wear and observed ROUNDTREE exit the SOURCE's vehicle at approximately 1:30 p.m. The SOURCE then met with me and other Task Force Agents at a secure location, where a Task Force Agent took possession of the suspected counterfeit DVDs and CDs. The SOURCE purchased sixteen CDs and fifteen DVDs for $60 in official funds and 56 DVDs for $40 in official funds. The SOURCE stated that a female identified by the SOURCE as KEISHA SIMMS was present during the purchase of the CDs and DVDs. The transaction was consensually audio/video recorded. Additionally, on March 3, 2006, the SOURCE identified Keisha SIMMS from a photo line-up as the woman who was

present at ROUNDTREE's residence at                          Lynchburg, Virginia,

during the controlled purchase.

### March 31, 2006, Controlled Purchase

28.  On March 28, 2006, the SOURCE placed a consensually recorded telephone

call to ROUNDTREE and ordered 24 jerseys (Mitchell & Ness).  On March 31, 2006,

prior to the SOURCE meeting ROUNDTREE, Task Force Agents traveled to the UPS

distribution center in Lynchburg, Virginia, and confirmed the presence of a C.O.D.

package in the amount of $565.00 addressed to RONALD R.

Lynchburg, Virginia, telephone                    .  The shipper information on the package

showed the shipper as BIH International, 1133 Broadway, New York, New York.

29.  On March 31, 2006, the SOURCE arrived at a Lynchburg Burger King at

approximately 11:50 a.m., whereupon ROUNDTREE motioned to the SOURCE to

follow him.  ROUNDTREE was driving a blue Chrysler van with Florida license plates.

30.  At approximately 11:55 a.m., ROUNDTREE and the SOURCE arrived at Z

Market, 1401 Park Avenue, Lynchburg, Virginia.  Task Force Agents observed that

ROUNDTREE was selling athletic shoes in the Z Market parking lot.  Before departing Z

Market, the SOURCE gave ROUNDTREE $1,150 in official funds.  ROUNDTREE then

entered Z Market and returned with what the SOURCE believed were two money orders.

ROUNDTREE returned $40 to the SOURCE.  ROUNDTREE departed Z Market at

approximately 12:15 p.m. to pick up the UPS package.  ROUNDTREE was later

observed by Task Force Agents taking possession of a box from a UPS driver, opening

the box, and counting the items inside.  He then returned to the Z Market, removed the

box from his van, met with the SOURCE, counted out 24 jerseys and delivered them to the SOURCE in the same box previously inspected by Task Force Agents at UPS.

31. On April 14, 2006, Global Express Money Orders Inc. provided photocopies of Global Express Money Orders #241158701 and #241158702 in the amount of $300.00 and $265.00 respectively. The money orders were issued on March 31, 2006, by Market #1, 8907 (earlier identified by Global Express as Z Market), made payable to BIH INTL, and signed by RONALD ROUNDTREE, address                    , Lyn [sic], VA.

### July 12, 2006 Controlled Purchase

32. On July 10, 2006, the SOURCE telephoned RONALD ROUNDTREE and arranged a purchase of Mitchell & Ness and Reebok jerseys, twenty four (24) total, at a cost of approximately $900 dollars. ROUNDTREE advised that the jerseys would arrive by United Parcel Service on July 12, 2006. On July 11, 2006, ROUNDTREE directed the SOURCE to meet him at "the store" (the Z Market, 1401 Park Avenue, Lynchburg, Virginia) on July 12, 2006.

33. On July 12, 2006, Task Force Agents traveled to the UPS distribution center in Lynchburg, Virginia, and met with a supervisor, who provided the TFAs with two COD packages scheduled for delivery that day, and displaying the following information:

**Package One**

SHIPPER INFO :    B I H INTL
                    (212)741-2320
                    1133 BROADWAY
                    NEW YORK NY 10010-7903

SHIP TO    :     RONALD R

                    LYNCHBURG, VA 24502-1037
                    UPS TRACKING # 1ZO7V8Y47241421230
                    COD CASHIERS CK/MO ONLY $565.00

**Package Two**

SHIPPER INFO:     MAIL BOX # 106
                  (646) 709- 0591
                  CISI
                  716 5 TH AVENUE
                  BROOKLYN NY 11209
SHIP TO:          BIG TEE

                  LYNCHBURG, VA 24502
                  UPS TRACKING # 1Z1883WV7244169371
                  COD CASHIERS CK/MO ONLY 740.00

34. On July 12, 2006, TFAs observed a controlled purchase of counterfeit jerseys. At approximately 11:00 am, the SOURCE placed a telephone call to ROUNDTREE, who directed the SOURCE to meet him at the Z MARKET. The SOURCE met ROUNDTREE and gave him $900.00 in official funds. ROUNDTREE then traveled to a 7-11 convenience store where ROUNDTREE purchased two money orders, presumably with the cash provided by the SOURCE. The SOURCE and ROUNDTREE met a UPS driver, ROUNDTREE presented the money order(s), received two packages and traveled back to the Z MARKET. There the SOURCE received 12 counterfeit NFL Mitchell & Ness jerseys and 12 counterfeit Reebok jerseys.

35. On August 08, 2006, UPS provided a TFA with copies of the aforementioned money orders. The following information was obtained from the documents:

| | |
|---|---|
| Company: | Western Union |
| Issuing Agent: | 7-Eleven |
| Date: | 07/12/06 |
| Time: | 1336 hrs |
| Location: | 021117 |
| MO Number: | 08481528752 |
| | 08481528753 |
| Payable to: | BIH INTL |
| Purchaser: | Ronald Roundtree |

15

Lynchburg, Virginia 24502

**Controlled Purchase at Gizmo Wear**

36. The SOURCE arranged for RONALD ROUNDTREE to introduce him/her to
his counterfeit merchandise suppliers in New York, New York. ROUNDTREE and the
SOURCE, along with TERRI SINGLETON, ROUNDTREE's girlfriend, traveled to New
York, New York. On August 18, 2006, ROUNDTREE introduced the SOURCE to an
individual identified as ABBAS CHOUMAN at "Jump Wear," 18 West 27th Street, New
York, New York. At Jump Wear, ROUNDTREE introduced the SOURCE to ABBAS
CHOMAN, who gave the SOURCE his business card. The SOURCE also observed two
other males working inside the location restocking clothes and moving boxes. They were
identified by the SOURCE via a photographic lineup as HUSSEIN CHOUMAN and
HASSAN CHOUMAN.

37. The SOURCE selected different brands of clothing for purchase. TERRY
SINGELTON assisted the SOURCE with the selection of clothing. ROUNDTREE also
selected clothes to purchase. The SOURCE purchased $3,280 worth of clothing.
ROUNDTREE told the SOURCE to give him (ROUNDTREE) the money to pay for the
merchandise. The SOURCE gave ROUNDTREE $3,300 and ROUNDTREE gave the
money to ABBAS CHOUMAN. The SOURCE subsequently received a signed sales
receipt from ABBAS CHOUMAN.

38. Following this transaction, I recovered the following items of clothing from
the SOURCE:

        36 pr. Girbaud Jeans/ $78 pr.
        7 pr. Ecko Jeans/ $58 pr.

16

8 pr. Enyce Jeans/ $68 pr.
6 pr. Phat Farm Jeans/ $ 70 pr.
29 pr. Evisu Jeans/ $365 to $625 pr.
12 pr. Akademiks Jean/ $88 pr.
24 Evisu T Shirts/ no price
21 Enyce T Shirts/ $36 ea
37 Akademiks T Shirts/ $40 to $56 ea.
30 Girbaud T Shirts/ $36 to $68 ea.
8 Rocca Wear T Shirts/ $28 ea.
6 cardboard boxes with "Jimmy" handwritten on each box.

39. Having received ABBAS CHOUMAN's business card during the controlled purchase of counterfeit clothing, on August 28, 2006, the SOURCE placed a telephone call to one of the numbers on the card and spoke with a male subject who identified himself as "Aby," believed to be ABBAS CHOUMAN. The SOURCE ordered clothing and instructed "Aby" to ship the C.O.D. order to an address in Glen Allen, Virginia (an FBI covert address) using the SOURCE's true name. "Aby" stated the order totaled $630 and should arrive on August 28, 2006. The SOURCE was told to make the payment to "Aby" at Gizmo Wear, 18 West 27th Street. On September 6, 2006, after providing a money order to UPS, TFAs took custody of a package shipped from GIZMO WEAR. The package contained the items ordered by the SOURCE.

40. On September 29, 2006, the SOURCE made another in-person purchase of suspected counterfeit clothing from Jump Wear (aka Gizmo Wear), 18 West 27th Street New York, New York. FBI Agents conducted surveillance of 18 W 27th Street, New York, New York, and had a clear view of the front of the aforementioned business. The Agents observed individuals the matching the description and believed to be HASSAN CHOUMAN and HUSSEIN CHOUMAN open the doors of the business at approximately 8:00 a.m. The SOURCE entered at approximately 9:45 a.m. and met with "Tasha," who the SOURCE had met during his/her visit to Jump Wear on August 18,

17

2006. The SOURCE identified himself/herself as an associate of "Talib" (RONALD
ROUNDTREE) from Virginia. The SOURCE selected the clothing and paid an
individual known to the SOURCE to be ABBAS CHOUMAN $540 in official funds.

### Verification of Counterfeit Nature of Merchandise

41. I contacted a representative of Mitchell & Ness, Inc., located in Philadelphia,
Pennsylvania, in December 2004 and November, 2005. The representative advised that
Mitchell & Ness is the sole United States manufacturer/distributor of Mitchell & Ness
throwback jerseys and has, as a result of restrictive marketing and sales, developed a
lucrative market allowing them to command high prices for what is a unique product.
The representative further stated that the average retail sale price for a Mitchell & Ness
NBA or NFL throwback jersey is approximately $250 to $350. The Mitchell & Ness
representative provided your Affiant a list of authorized retailers of their merchandise.
The representative stated that no individual or business is authorized or licensed to sell
their product unless they are approved by the corporation and are listed on the retailer list.
The Mitchell & Ness representative further verified to your Affiant that RONALD
ROUNDTREE, TALIB, TALIB SPORTSWEAR, Unity Urban Wear, Gizmo Wear Inc.,
Gucci USA, Jump Wear, and T Shirt International are not authorized retailers of any of
their products. In addition, the representative stated that the company is experiencing a
significant problem with the sale and distribution of counterfeit versions of their
merchandise in the eastern part of the United States.

42. Much of the merchandise acquired from the subjects of this investigation
through the controlled purchases described below has been verified to be counterfeit
versions by experts. Richard Logue is an Investigator employed by Blazer Investigations,

which represents many major apparel manufacturers, including Mitchell & Ness, Nike,

and Timberland, in connection with trademark infringement.  In April, 2006, and

November, 2006, Logue examined the apparel purchased by the SOURCE to that date

and advised your Affiant that in his opinion, all of the items as to which he was qualified

to give an opinion were likely not manufactured by the legitimate manufacturer.

However, Logue has not determined that every item in question in fact bears a counterfeit

mark; and Logue was not qualified to state whether certain kinds of items bore

counterfeit marks

43.  The following trademarks relevant to this investigation are currently

registered with the U.S. Patent and Trademark Office:

| Mark-holder | Trademark Registration # | Description |
| --- | --- | --- |
| Hidehiko Yamane | 2469063 | Evisu word mark |
| Comet Intercontinental, Inc. | 2633943 | Rocawear word plus design |
| Rocawear Licensing LLC | 2781618 | Rocawear design |
| Comet Intercontinental, Inc. | 2434124 | Rocawear word |
| Mitchell & Ness | 2845049 | Mitchell & Ness script logo |
| Phat Fashions Inc. | 1809325 | Phat Farm word mark |

44.  In April and November, 2006, Andy Pappas of the Recording Industry of

America Association examined a sampling of the DVDs and CDs acquired from each

controlled purchase made by the SOURCE.  In his opinion, all of the samples he

examined were counterfeit.  Further, the packaging, specifically the cover and wrapping,

of the DVDs and CDs purchased by the SOURCE were inconsistent with the wrapping

and packaging of authentic DVDs and CDs.  That fact, in combination with the fact that

many of the items purchased by the SOURCE were films playing in movie theaters when

purchased, strongly suggests these items were counterfeit.

MAR-08-2007 07:29
US ATTORNEYS OFFICE Fax:302-573-6120
P.23

## Arrest of WILLIAM STATTS – February 25, 2006

45. On February 25, 2006, at the Cowtown Flea Market, Pilesgrove Township, Salem County, New Jersey, New Jersey State Police arrested WILLIAM STATTS, of Harrington, Delaware, and another man and charged them with possession of 320 pairs of counterfeit Nike sneakers. Accordingly to a police report in that case, STATTS was seen at the Cowtown Flea Market packing large cardboard boxes with smaller boxes of sneakers, and carrying them to a yellow box truck parked in the flea market parking lot. Afterwards, STATTS was seen selling clothing at a booth in the flea market. When investigators asked STATTS about his involvement with the counterfeit sneakers, STATTS denied any complicity. After investigators arrested STATTS and the second man and recovered approximately 320 pairs of counterfeit Nike sneakers from the yellow truck and the booth, STATTS was released on his own recognizance. He was seen driving the yellow truck away from the Cowtown Flea Market.

## ROUNDTREE'S Telephone Communications with SINGLETON

46. A review of wire communications intercepted during the period July 7, 2006, to August 21, 2006, occurring over the cellular telephone (ROUNDTREE's telephone) resulted in the identification of several wire communications to/from cellular telephone                subscribed to TERRI LYNN SINGLETON. Audio review of these calls indicated that SINGLETON conspired with ROUNDTREE in the trafficking of counterfeit clothing and in laundering the proceeds of such trafficking.

47. On July 07, 2006, ROUNDTREE made an outgoing call to (SINGLETON's telephone). The following dialogue occurred:

20

| | |
|---|---|
| Roundtree: | I aint heard (unintelligible) this long about some UPS place to pick up, uh a clothes package, the jabolin and all that. |
| Terri Singleton: | Oh for real? |
| Roundtree: | Yeah, Girbaud, Rocka Wear, Academik, and ahh, some shoes. |
| Roundtree: | But you know what? |
| Terri Singleton: | What? |
| Roundtree: | I didn't pay my rent today, I took my rent money this time, and told the dude I'd pay him umm, Monday, I'll pay him Monday, I'll send it back Monday. |
| Roundtree: | I mean it's like you just wait two more days, three more days. I'm saying, why give him $550 when my package was $582 and I can still can still make (unintelligible) yanno what I'm saying? |
| Terri Singleton: | Yeah, yep. |
| Roundtree: | (unintelligible) can exactly wait. |
| Terri Singleton: | Yep. |
| Roundtree: | So that gives me more to work with, yanno what I mean? |
| Terri Singleton: | Yep. |
| Roundtree: | So all together this week, all together this week, ahh, I invested about $2400, $2500. |
| Terri Singleton: | You know uhh, Yanno what I want you to do? |
| Roundtree: | What? |
| Terri Singleton: | Who taking your scissors? (To background) |
| Roundtree: | Huh? |
| Terri Singleton: | You know what I want you to do? |
| Roundtree: | What baby? |
| Terri Singleton: | Keep all them, umm, keep all your UPS receipts. |
| Roundtree: | All right. |
| Terri Singleton: | Know what I'm saying? |
| Roundtree: | All right. |
| Terri Singleton: | From now on keep all your UPS receipts. |
| Roundtree: | Okay. |
| Terri Singleton: | And then when you come back you bring them to me, and then I can tell you exactly what you spent. |
| Roundtree: | You can tell me what? |

| Terri Singleton: | Keep in your head exactly what you spent. |
| Roundtree: | All right. |
| Terri Singleton: | And you need to keep your money order receipts too. |
| Roundtree: | All right. |
| Terri Singleton: | Because want me to tell you why? |
| Roundtree: | Why? |
| Terri Singleton: | That, all that goes with your taxes. |
| Roundtree: | Right. |
| Terri Singleton: | The money that you pay, for the taxes that you pay on them, umm, money orders you get back, the taxes you pay on them UPS things you get back. |
| Roundtree: | All right. |
| Terri Singleton: | See you need to keep every last one of them from today until the first of the year. |
| Roundtree: | All right. |
| Terri Singleton: | So we're... |
| Roundtree: | Okay. |
| Terri Singleton: | Gonna get a box for that too. |
| Roundtree: | Yeah. |
| Terri Singleton: | We're gonna put all that in the box with the with the bill receipts. |
| Roundtree: | Right. |
| Terri Singleton: | Okay. |
| Roundtree: | Yes, I see what you're saying. |
| Terri Singleton: | You need to, every time you get it put it in that little console thing where you putting all your change. |
| Roundtree: | Yeah. |
| Terri Singleton: | Then that way you know that you have them every time that you, uhh, that you come. |
| Roundtree: | All right. |
| Terri Singleton: | So you won't be like I invested, uhh, something like you're gonna know what you did. |
| Roundtree: | Yeah. |
| Terri Singleton: | Okay. |
| Roundtree: | Yeah, yeah I see what you're saying. |

| | |
|---|---|
| Terri Singleton: | All right. |
| Roundtree: | Yep. |
| Terri Singleton: | Need you to do. |
| Roundtree: | All right. |
| Terri Singleton: | We can get it all together. |
| Roundtree: | Okay, sounds good. |
| Terri Singleton: | And then we're gonna label it, yanno what I'm saying? |
| Roundtree: | Uh huh. |
| Terri Singleton: | Gonna label. Uhh, what that package was. We gonna label what shoe that was too, baby. Gonna label all of that, yanno what I'm saying? |
| Roundtree: | Yeah. |
| Terri Singleton: | And then, (unintelligible) And then, you're gonna know what you spent, how many, how many styles of this sport you bought. How many, uhh, 7's, how many 5's, that you purchased in the month. So that... |
| Roundtree: | Right. |
| Terri Singleton: | Way you can see what is selling selling, and what is not really selling. |
| Roundtree: | Right. |
| Terri Singleton: | Because you will have the receipts for that. |
| Roundtree: | Right. |
| Terri Singleton: | Yanno what I'm saying. |
| Roundtree: | Right. |
| Terri Singleton: | So when you get, when you get the box, and you have that receipt, you take the pen out and put on that receipt Airforces. Know what I'm sayin'? |
| Roundtree: | Yeah. |
| Terri Singleton: | Then when you get here, you can tell me which Airforce it was. Or... |
| Roundtree: | Yeah. |
| Terri Singleton: | Is it Michael Jordan's, or whatever, know what I mean? |
| Roundtree: | Yeah. |
| Terri Singleton: | All the way down to Girbaud, Academik, whatever. And then that way, we can be like, well baby, you know we you only sold like 5 Academic shirts this week and 5 the week after that |

we don't need to order no more of them, try this. Yanno what I mean?

Roundtree:      Right.

Terri Singleton:      So...

Roundtree:      Okay, all right (unintelligible).

Terri Singleton:      We are on our way to organization here.

Roundtree:      Mm, that's very much needed, I'll tell ya that.

Terri Singleton:      Know what I'm sayin?

Roundtree:      Yep.

Terri Singleton:      And then, with the computer we, yanno what I'm saying, when we get that, everything we have we can put that into that computer and then we can put it on a floppy disk.

Roundtree:      Okay.

Terri Singleton:      And then we put the floppy disk up. So then that way, yanno what I mean?

Roundtree:      Yeah.

Terri Singleton:      And the first of the year come back, we can take that floppy disk and print off everything that you have

Roundtree:      Okay.

Terri Singleton:      And then, with the scanner, and the receipt that you have, that you come back with, we are going to scan it, and we are going to print it and put that up to. So therefore, we will have 3, 3, yanno, places that we have, or will have. A place in the computer, we'll have a place on a disk, and we'll have a place on paper, in case 1 of the 3 gets destroyed, we still got a backup somewhere.

Roundtree:      Okay.

Terri Singleton:      Okay.

Roundtree:      All right.

Terri Singleton:      This is gonna happen.

Roundtree:      You, uhh, you sell any shoes yet?

Terri Singleton:      No.

Roundtree:      (laughs) You worthless, d.r. man.

    48.  On July 8, 2006, ROUNDTREE called SINGLETON's telephone.  During

the call, Singleton stated, "As soon as I left to take Alexis (phonetic spelling) home I sold

three pairs of shoes and what." ROUNDTREE asked SINGLETON, "How much you got?" SINGLETON replied, "210." ROUNDTREE stated, "75 of it is yours." ROUNDTREE and SINGLETON discussed her transferring funds to him. Also, SINGLETON told ROUNDTREE about a buyer who asked her to reduce a price from 85 to 80.

### ROUNDTREE's Telephone Communications with STATTS

49. Records from a court-authorized pen register show that the telephones used by ROUNDTREE and STATTS made contact a total of 128 times between February 2, 2006, and October 2, 2006. A review of court-ordered wire interceptions of communications from the cellular telephone,                    registered to ROUNDTREE, resulted in the identification of calls to or from cellular telephone,                    , registered to William STATTS. Audio review of these calls by I indicated that a man, known as Hamza (an alias of STATTS) conspired with ROUNDTREE to traffic in counterfeit goods.

50. On July 22, 2006, ROUNDTREE received a call from STATTS, while traveling in a vehicle with SINGLETON. During the conversation, STATTS asked if ROUNDTREE was on his way. ROUNDTREE explained that he was on his way to Philadelphia, and that "I am going to be like in Jersey between Jersey and Philly for a couple days so I am going to make the shopping thing my last thing because I don't want to drive around with my merchandise in my car." STATTS told ROUNDTREE that he had "400 joints." STATTS stated, "I have a dude in Cow Town right now that has some them clear joints." ROUNDTREE asked for a price, and STATTS said that the seller had four colors, and was "doing them for 65." ROUNDTREE asked how they looked. Note

that "joints" is believed to be a code word for counterfeit merchandise, in this instance referring to pairs of counterfeit shoes.

51.  Later on July 22, 2006 (while still driving with SINGLETON), ROUNDTREE received an incoming call from a man named Yousef. Yousef told ROUNDTREE, "your brother Hamza just give me your number and told me to call you." ROUNDTREE asked where Yousef was, and Yousef gave the numbers 666, and a description of his location.  Yousef stated, "Yeah, you have to come here because I have very good stuff, you know, you brother just call me, he's telling me I have a lot Air Force and the clear one you know I have beautiful stuff."

52.  On August 8, 2006, ROUNDTREE received a call from STATTS. ROUNDTREE explained that he had called to get an update on "the clear Jordans." STATTS said, "Yeah, I've seen them, but there not on the market yet, I've got this dude that says that he got them.  The same brother that we met in Cowtown, he said that uh, he told me to tell you that he, he was find, trying to find out whether or not his man had got his order in today, he said if he didn't get it in today, that he would definitely have it tomorrow, he has eight colors in the Airforce in the clear joints." STATTS explained, "He said he was doing it for fifty-three." STATTS further stated, "I asked him about the clear Jordans, he said he had, that he did have some but, you know what I mean, asked me how many cases I wanted to send of the others, so I'm like, you know what I mean, he said the dude that he was working through only dealt with cash and this that and the other, and I said, I mean, he telling me to send him some money and he would send me sneakers, and I was like yo I aint have no problem coming to you, yo, he said well he was in Queens, I said I have no problem coming to Queens." STATTS explained, "I'm not

just not giving up no money without seeing what I'm getting." STATTS said, "It's messy up there," and that "the dude I'm dealing with are getting ran up on left and right. . . .[T]hey got them . . . people that be running around looking into things up there ... that's part of the game right there." Later during the conversation, STATTS referred to a supplier who was "still getting them through the airmail joint. . . . that's how they were getting the clear Airforce Ones ... I mean the clear . . . Jordans." STATTS said, "he came off and told me about the . . . customs booking stuff so I was like, wow, you know what I mean, this is like the third time I have heard this." The two men also discussed selling sneakers online:

| | |
|---|---|
| William Statts: | but you know what I mean, that's the key with them they new about the hot stuff, they got this website out called uh, uh, swiftkicks or coolkicks.com or some crap. I guess there's a million websites that people are putting together to sell sneakers on online, right? |
| Roundtree: | Right. |
| William Statts: | In any, in any event, you know what I mean, they coming up with all these different colors, you know what I mean, different things that people are seeing, and they, and the prices their quoting it's like mad cheap, you know what I mean?. |
| Roundtree: | Yeah, I know, I told you, I told you, I told you the two, the two Munirs, uh, uh, Rashid's son and Atheem's son, two, three months ago, three months ago, they've been getting them joints, they've been getting them for thirty-five dollars, man. |
| William Statts: | Wow, aht. |
| Roundtree: | Thirty, three months ago they were getting them for thirty-five dollars. |
| William Statts: | I gotta sell them for fifty-five. |

| | |
|---|---|
| Roundtree: | You know what I'm saying, you know the whole thing with them was when they starting telling me that they had a couple packages snatched by customs, I don't want to mess around. |
| William Statts: | Right, (unintelligible) cuz I couldn't, I can't see that. |
| Roundtree: | Yeah. |
| William Statts: | The risk factor in that particular matter, (unintelligible), for me a critical joint, you know what I mean. |
| Roundtree: | Yeah, the price, the price is wonderful, you're not, you're not gonna beat that price, but then again you little pissed off because your snatched stuff. |

The two men further discussed sales prices for sneakers. STATTS told ROUNDTREE, "I'm trying to find a way, I've been working on a way to try to get ourselves in, into where we can get them joints for the bottom line, man." ROUNDTREE told STATTS that he was making fifty dollars profit per pair of shoes, since he was paying $36 "with the shipping and everything" and selling for $85. ROUNDTREE also mentioned that one supplier required that he spend $10,000 in order to get the lowest price. STATTS said, "what we gotta do, is figure out how we gonna make that happen and bring our change together and get that." STATTS suggested that four buyers, paying $2500 apiece, could, "To get that price (unintelligible) bring that change back together and do it again until we get our supply. . .We get the bottom line and we consolidate our money and we do it like that, aht." STATTS also stated that if Yousef called him he would relay information to ROUNDTREE. Note that "getting run up on" is slang for drawing attention from law enforcement officers.

### Shipments of Packages to ROUNDTREE at SINGLETON's Residences

53. In addition to Terri SINGLETON's direct involvement with the distribution of counterfeit merchandise, calls to and from ROUNDTREE's phone indicate that

ROUNDTREE used SINGLETON's residential address, 316 Woodlawn Avenue, Beckley, West Virginia, to receive wholesale shipments of clothing from known counterfeit clothing suppliers. On July 19, 2006, ROUNDTREE received a return call from _____ subscribed to by Amadou Gassama. The unknown male, named Al-Amin, is suspected of being a counterfeit clothing supplier in New York. During the conversation, ROUNDTREE ordered two dozen Mitchell & Ness jerseys, but told the seller to "ship them to a different address." ROUNDTREE explained, "I'm not in Lynchburg right now, I'm in West Virginia, I got a crib in West Virginia too. You're gonna ship them to West Virginia, you need to take my address." ROUNDTREE gave the seller SINGLETON's address, _____, Beckley, West Virginia. "Crib" is common slang for house.

54. Similarly, on August 9, 2006 ROUNDTREE called _____ registered to Crush Wear, Inc., 18 W. 27th St., New York, New York (the location of Gizmo Wear, Inc.) , and spoke to an unidentified female, followed by Abbas Chouman. During the conversation, ROUNDTREE explained to the female why he did not want small sizes: "Alright I don't want nothing, I can't sell the small, I live in West Virginia and selling in West Virginia is all big women in West Virgnia. I get stuck with all the small sizes." Later, after ROUNDTREE ordered jeans from Abbas Chouman, Chouman asked, "Okay you still in the same place 1121?" ROUNDTREE stated, "Nah um I'm working in two places now so I want this shipped to West Virginia.... I'm working in two places. I'm working in Lynchburg, and I'm working in West Virginia." ROUNDTREE gave Chouman SINGLETON's address in Beckley. Note that "1121"

29

was an apparent reference to               Lynchburg, Virginia, where

ROUNDTREE resides with KEISHA SIMMS.

55. On March 2, 2007, United Parcel Service provided records of shipments

received at        'oodlawn Avenue, Beckley, West Virginia, 25801 and 227 Woodlawn

Avenue, Beckley, West Virginia, 25801. The following records reflect shipments from

August 14, 2006 to December 20, 2006, pertaining to C.O.D. shipments from GIZMO

WEAR, INC, 28 W. 27th St., New York, New York, 10001 to

Beckley, West Virginia, 25801 and               , Beckley, West Virginia,

25801:

| Address Shipped To | Date | Amount | Signature |
|---|---|---|---|
| , Beckley, West Virginia, | | | |
| 25801 | 8/14/2006 | 426 | R. Roundtree |
| | 8/23/2006 | 798 | R. Roundtree |
| | 8/26/2006 | 798 | R. Roundtree |
| | 8/31/2006 | 205 | R. Roundtree |
| | 9/15/2006 | 486 | R. Roundtree |
| | 9/29/2006 | 380 | R. Roundtree |
| | 10/9/2006 | 354 | R. Roundtree |
| | 10/12/2006 | 150 | Unknown |
| | 10/12/2006 | 150 | Unknown |
| | 10/27/2006 | 430 | R. Roundtree |
| | 11/1/2006 | 430 | R. Roundtree |
| | 11/6/2006 | 430 | R. Roundtree |
| | 11/13/2006 | 430 | R. Roundtree |
| , Beckley, West Virginia, | | | |
| 25801 | 12/20/2006 | 214 | R. Roundtree |

The UPS shipping records show that ROUNDTREE received and signed for 12 C.O.D.

packages from GIZMO WEAR, INC, for which ROUNDTREE paid a total of $5381.00.

Your affiant also notes that 2 additional packages, for which $300 was paid, were shipped

on 10/12/2006, to               Beckley, West Virginia, 25801. Although

these packages were shown to be received by ROUNDTREE, the signature was ineligible

and did not match that of the other packages signed for by "R. Roundtree." Note that the

final package was sent to _____, Beckley, West Virginia, instead of to

_____ Beckley, 25801.

56. On February 28, 2007, FBI conducted physical surveillance at

_____ Beckley, West Virginia 25801. This surveillance revealed that

ROUNDTREE's 2001 Ford Windstar Van was parked in the driveway of the residence.

This surveillance also revealed that the residence at _____ is a west-

facing, two story brick house with an attic and basement. It has a concrete covered front

porch with four wooden support beams and a wooden railing. The front door is white

with a half circle window. To the left of the front door is a hanging black metal mail box

with the number 227. On the front of the house are two windows on the ground floor

level and three on the second floor. The house sits on _____, between the

intersections of _____ and _____. This surveillance also revealed that the

residence at _____ (Singleton's previous address) appeared to be in

great disrepair and uninhabited.

57. United Parcel Service shipping records show that on December 20, 2006,

ROUNDTREE began receiving shipments from a company with a new name, SQUARE

UNLIMITED, with the same physical address as GIZMO WEAR, INC., at 28 W. 27th St.,

New York, New York. It is likely that the new name describes the same New York

counterfeit clothing business that has supplied ROUNDTREE during the period of this

investigation. Toll records for telephone _____ registered to ROUNDTREE,

reflect that his phone was in contact with telephones _____ and _____

(which controlled purchases and business cards have established as the business numbers

for GIZMO WEAR, INC.), 41 times between January 9, 2007 and February 15, 2007.
Thus, despite the fact that ROUNDTREE ceased receiving shipments from GIZMO
WEAR, INC. on December 20, 2006, significant contact with telephones used by
GIZMO WEAR, INC. continues. Based on the aforementioned shipping records, the
identical physical addresses of GIZMO WEAR, INC and SQUARE UNLIMITED, and
the continued telephonic contact by ROUNDTREE with telephones used by GIZMO
WEAR, INC it is reasonable to believe that GIZMO WEAR, INC is now shipping
packages under the business name SQUARE UNLIMITED.

58. On March 2, 2007, United Parcel Service provided shipping records of
shipments received at                    Beckley, West Virginia, 25801. The
following records reflect shipments from December 20, 2006 to February 15, 2007,
pertaining to C.O.D. shipments from SQUARE UNLIMITED, 28 W. 27th St., New York,
New York, 10001 to                    , Beckley, West Virginia, 25801 and
        , Beckley, West Virginia, 25801:

| Address Shipped To | Date | Amount | Signature |
|---|---|---|---|
| , Beckley, West Virginia, 25801 | 12/20/2006 | 214 | R.Roundtree |
| | 1/02/2007 | 480 | R.Roundtree |
| | 1/02/2007 | 480 | R.Roundtree |
| | 2/07/2007 | 390 | R.Roundtree |
| | 2/07/2007 | 450 | R.Roundtree |
| | 2/07/2007 | 450 | R.Roundtree |
| | 2/07/2007 | 450 | R.Roundtree |
| | 2/07/2007 | 390 | R.Roundtree |
| | 2/15/2007 | 450 | R.Roundtree |
| | 2/15/2007 | 450 | R.Roundtree |
| | 2/15/2007 | 450 | R.Roundtree |
| | 2/15/2007 | 450 | R.Roundtree |

These shipping records show that ROUNDTREE received and signed for 12 C.O.D.

packages from December 20, 2006 to February 15, 2007, that were shipped from

SQUARE UNLIMITED, for which ROUNDTREE paid a total of $5104.00.

    59. Toll records for ROUNDTREE's telephone,       , reflect that his

phone has been in contact with telephone      , registered to Ronald G.

ROUNDTREE, but known to be used by SINGLETON in Beckley, West Virginia, 677

times from January 8, 2007 to February 21, 2007.

### ROUNDTREE's Use of Keisha Simms's Residence for Criminal Purposes

    60. On March 2, 2007, United Parcel Service provided shipping records of

shipments received at        Lynchburg, Virginia, 24502. The following

records, reflect shipments from April 21, 2006 to December 20, 2006, pertaining to

C.O.D. shipments from GIZMO WEAR, INC, 28 W. 27th St., New York, New York,

10001 to       Lynchburg, Virginia, 24502:

| Address Shipped To | Date | Amount | Signature |
|---|---|---|---|
| Lynchburg, Virginia, 24502 | 4/21/2006 | 170 | R.Roundtree |
| | 4/21/2006 | 390 | R.Roundtree |
| | 6/07/2006 | 486 | R.Roundtree |
| | 6/07/2006 | 486 | R.Roundtree |
| | 6/16/2006 | 475 | R.Roundtree |
| | 6/20/2006 | 325 | R.Roundtree |
| | 6/29/2006 | 516 | R.Roundtree |
| | 7/07/2006 | 582 | R.Roundtree |
| | 11/22/2006 | 582 | R.Roundtree |
| | 11/27/2006 | 350 | R.Roundtree |
| | 11/29/2006 | 380 | R.Roundtree |
| | 12/08/2006 | 270 | R.Roundtree |
| | 12/11/2006 | 410 | R.Roundtree |
| | 12/12/2006 | 210 | R.Roundtree |
| | 12/13/2006 | 210 | R.Roundtree |
| | 12/15/2006 | 410 | R.Roundtree |
| | 12/20/2006 | 570 | R.Roundtree |

These shipping records show that ROUNDTREE received and signed for 17 C.O.D. packages from GIZMO WEAR, INC, to SIMMS's address, for which ROUNDTREE paid a total of $6,282.00.

61.  In addition, United Parcel Service provided the following records, reflecting shipments from December 20, 2006 to January 31, 2007,  pertaining to C.O.D. shipments from SQUARE UNLIMITED, 28 W. 27th St., New York, New York, 10001 to 1121 Stratford Road, Lynchburg, Virginia, 24502:

| Address Shipped To | Date | Amount | Signature |
|---|---|---|---|
| Lynchburg, Virginia, 24502 | 1/18/2007 | 336 | R.Roundtree |
|  | 1/26/2007 | 540 | R.Roundtree |
|  | 1/31/2007 | 750 | R.Roundtree |

These shipping records show that ROUNDTREE received and signed for 3 C.O.D. packages from SQUARE UNLIMITED in  January 2007, for which ROUNDTREE paid a total of $1,626.00.

62.  On January 12, 2007, Task Force Agents conducted a surveillance of the residence located at                    1, Lynchburg, Virginia, and witnessed RONALD ROUNDTREE and KEISHA SIMMS arrive at and enter the residence.  Further, on March 3, 2007, physical surveillance conducted by FBI, witnessed RONALD ROUNDTREE loading/unloading boxes from his 2001 Ford Windstar Van, which was parked in front of                    , Lynchburg, Avenue, 24502.  During the surveillance, FBI agents drove past ROUNDTREE's van and observed that the van contained multiple boxes.  In addition, behind ROUNDTREE's van was parked a gold Nissan Maxima with Virginia license plates KYLEAF, registered to Keisha Jenelle Simms.

34

63.  Toll records for ROUNDTREE's telephone,                      , reflect that this

phone has been in contact with telephone                    (registered to Jeanette Newton

but used by Keisha Simms at                   ) 225 times from January 9, 2007 to

February 21, 2007.

### Conclusion

64.  Based on all of the facts and circumstances, there is probable cause to believe

that, from at least January 2005 until the present, within the Eastern District of Virginia

and elsewhere, RONALD ROUNDTREE, TERRI LYNN SINGLETON, WILLIAM

STATTS, and other persons have committed the offense of conspiracy to traffic in

counterfeit goods, in violation of 18 U.S.C. sections 371 and 2320.

David J. Glawe
Special Agent
Federal Bureau of Investigation


Subscribed and sworn before me this 6th day of March, 2007.


Dennis W. Dohnal

United States Magistrate Judge


A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

35

TOTAL P.38